Ex Parte Will A. Morriss.

No. 10588. Delivered February 1, 1928.
Rehearing granted October 10, 1928.

The opinion states the case.

No brief filed for relators.

*A. A. Dawson,* State's Attorney, for the State.

LATTIMORE, JUDGE.—For conduct occurring in the presence of the court below, in the trial of a criminal case on September 28, 1926, which conduct is set out at length in the order and judgment made and entered herein, this applicant was held in contempt and ordered to pay a fine of ten dollars; until this was done he was committed to the custody of the sheriff. On the same day and under oath applicant did enter his disclaimer of any contemptuous purpose, or that his effort to get before the jury testimony theretofore held by the court inadmissible, was a wilful defiance or disobedience to the court's rulings, but that on the contrary, after the testimony referred to had been by the court rejected,—other facts came out which, in applicant's belief, made admissible said rejected testimony, and same was accordingly again offered and insisted upon. Failing to get said judgment of contempt set aside, on the day following the entry of said judgment an application for habeas corpus was made to this court, alleging illegal restraint by the sheriff under said contempt judgment. A temporary writ was granted, bail fixed pending hearing before the whole court, and the matter was later submitted to us for our decision.

On October 6th following the granting of the writ, there was filed in the office of the clerk of this court what might be denominated the transcript herein, wherein, over the certificate of the district clerk, appears a copy of the order and judgment of the court finding applicant guilty of contempt for the doing of the things set forth; fixing the penalty and directing applicant's restraint until the fine was paid; also a copy of applicant's disclaimer. There appears among the papers a written statement signed by the applicant and the district attorney who represented the State in the court where the alleged contempt occurred, which seems to have been sent to our State's Attorney, and in which it is stated that they can not agree upon a statement of facts. We find further an undated and unsworn request by the applicant, setting up that he is unable to get a statement of facts from the district attorney and the trial judge, and that this court "refer the case to some tribunal" to ascertain the facts.

We know of no tribunal authorized to act upon such reference in a case like this, but if applicant had made out a statement of the facts as he understood same, and in due time had tendered same for agreement to the State's Attorney,—and for approval to the trial court, and there was a showing that the trial court refused to approve such statement of facts so tendered, and further refused then

to make out and file a statement of his own, this court would have been in a position to say that applicant had been deprived of a statement of facts without negligence on his part.  ·

. In the condition we find the record, we have nothing before us save the order and judgment of the court, and the disclaimer of the applicant.   Mr. Branch cites many cases in Sec. 272 of his Annotated P. C., holding that when the trial court has jurisdiction of the subject-matter and the parties, and has power to render the judgment of contempt appearing,—that such judgment is not void, and will not be reviewed on habeas corpus.   Ex parte Tinsley, 37 Texas Crim. Rep. 527; Ex parte Warfield, 40 Texas Crim. Rep. 413. There seems no question of the jurisdiction of the court below both over the subject-matter and parties.   In such case this court has no power to review the action of the court below by habeas corpus when the facts set out in the judgment are such as make contempt, and this is especially true when there is no statement of facts.

The applicant will be remanded to the custody of the sheriff of Gillespie county, and the application for habeas corpus denied.

*Writ denied.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—At the time the opinion was written refusing to discharge the relator, there was before this court no statement of the facts occurring at the time the order of contempt was made, and there was before this court nothing to guide it save the recitals in the judgment of contempt.   By the various averments under oath the relator has made it plain to this court that he has been unable to procure an agreed statement of facts and that he has made diligent efforts to do so, and that in lieu of such agreed statement of facts and in support of his application, he has prepared and filed a statement purporting to give the facts attending and leading up to the entry of the order, which is verified and is shown in the verification to have been presented to the representatives of the state.   It also appears that notice has been given to the State's Attorney before this court by the District Attorney that no statement of facts could be had.   The relator has attached to his application a transcription by the court stenographer of the evidence heard upon the trial of the case in which the contempt order was made, all of which is now before this court.   No answer has been filed controverting any of the facts mentioned.   The matter might be regarded as analogous to the rule in appealed cases where the accused has,

without fault chargeable to him, been denied a statement of facts. However, the facts presented have been examined on the assumption from the circumstances mentioned above that they correctly reflect the incidents upon which the judgment rests.

From the statement of facts and transcript prepared by the stenographer, it appears that Joe Lee Welch was on trial charged with forgery and passing a forged check. The forging and passing were proved and the identity of Welch as the offender was vouched for by the State's witnesses. The appellant interposed the defense of mistaken identity, claiming that not he but Claude Roberts committed the offense. The appellant sought to prove by his father, W. Welch, that a declaration was made by Claude Roberts in the presence of his father, the appellant and his father, in which alleged declaration Claude Roberts admitted that he, and not the appellant, committed the offense. The appellant also offered to prove that on the day after the making of the declaration to which reference is made, Claude Roberts made a declaration in the presence of his mother and the appellant which was favorable to the appellant. Upon objection, both of these declarations were excluded by the court and we think properly so. The alleged confession and declaration of Roberts under the circumstances was hearsay, and nothing developed at the time it was offered to warrant its receipt in evidence.

The appellant's counsel contended that because Claude Roberts had been subpoenaed as a witness, had disobeyed the subpoena and had been fined, that the testimony, while contrary to the usual rule, had become admissible. Relator stated, however, that upon that subject he was not clear but desired to offer testimony. Upon its rejection he reserved a bill of exceptions to its exclusion. He also contended that, the statement having been made by Roberts to his father, that it became admissible by reason of the confidential relations. Subsequently, in rebuttal, the State introduced as a witness, S. W. Roberts (a brother of Claude Roberts), who gave testimony that after the examining trial at which the witness was present there was a conversation between the appellant and Claude Roberts in which appellant said to the latter:

"If you appear against me at Court and testify as to what happened, I am bound for the penitentiary, and the only chance for me is for you to get out of the way."

The witness testified that at the time the declaration was made the father, mother and brother of Claude Roberts, besides the witness, were present, and that the appellant made no denial of the state-

ment; that he did not hear Claude Roberts say at the time that he made the declaration to the officers charging the appellant with the offense in order to facilitate his own escape. After the proceeding mentioned, the relator advised the District Attorney that he regarded the eliciting of the testimony above referred to as rendering admissible the alleged declaration of Claude Roberts previously excluded. After the State had concluded the examination, the relator offered the appellant's father as a witness to give testimony of the same facts as those which had been previously tendered and which had been excluded upon objection by the State. The relator reserved his bill of exceptions showing that after the appellant's father stated that he was present when Claude Roberts made a declaration, the following took place:

"Q. Who was present at that conversation?

"A. Well, me and my boy, Joe Lee, Claude Roberts, and Jess Roberts.

"Q. Was anything said by Claude Roberts as to who made and passed the check here in question?

"Mr. HAMMOND: We object to the question—

"THE COURT: The objection will be sustained—Mr. Sheriff, take charge of this jury and take it out of the court room—

"MR. MORRISS: If the Court please, I would like to be heard on this question—

"THE COURT: The Court has heard you too many times now. I will state that no explanation can be made for this situation. I will state that the attitude of Mr. Morriss, as counsel for the defendant, has been persistently in disobedience and disregard of the rulings of the Court. And this persistent asking of questions that the Court has ruled on repeatedly and not adhering to the rulings of the Court and paying no attention to the Court, this is contempt of this Court, and Mr. Morriss is now adjudged to be in contempt of this Court by reason of that persistent disregard of the Court's ruling on different matters, and in deliberately and persistently seeking to get before this jury testimony that he knows that was not admissible under the rulings of the Court, and in order not to be too harsh, the Court will assess a fine of ten dollars against Mr. Morriss, and Mr. Morriss will be remanded to the custody of the Sheriff at the termination of this case now on trial, there to remain until said fine has been paid.

"MR. MORRISS: I want to state to this Court now, that I had no earthly purpose or desire or disposition either to disobey the rul-

ings of the Court or to ignore the rulings of the Court or to any way be in contempt of the Court. I want to state now, that after the State had closed its case, after the State had interposed the testimony of Sid Roberts as to a conversation between this defendant and his brother, the Roberts boy—In view of that fact, I discussed with the District Attorney and said to him that I then felt, and now feel, that in my judgment this testimony to be admissible."

Many of the remarks of the court mentioned, as well as those set out in the judgment of contempt, are quite general. Such as are specifically set out in the judgment relate to the subsequent effort of relator to have the appellant's father repeat the conversation with Claude Roberts which the court had excluded when originally offered.

"It is peculiarly the duty of an attorney to maintain the respect due to courts and judicial officers, and any breach of this duty is a contempt." (Ruling Case Law, Vol. 6, p. 493, sec. 7.)

"The relationships of court and attorneys, bench and bar, are reciprocal, and each, in their proper sphere, is clothed with powers, rights, and privileges which are to be recognized and respected by the other. These relations should be recognized and respected alike by the bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction."

"Courts will look with much allowance upon the zeal and partizanship of counsel representing their clients in the courts. Without zeal, and without an honest and fervent desire to have everything done and to do everything that can be done within his power that is honorable to promote the interest of his client, and secure him a fair and impartial trial, the object of counsel would be destroyed; and the bar would soon fall into disrepute." (Ex parte Snodgrass, 43 Tex. Crim. Rep. 365.)

As it relates to the controlling legal principles and the facts involved the present is not dissimilar from the cases of Ex parte Heidingsfelder, 206 S. W. Rep. 351; Ex parte Miller, 244 S. W. Rep. 612; Ex parte Duncan, 62 S. W. Rep. 758; and Ex parte Crenshaw, (96 Tex. Crim. Rep. 657) in which Judge Lattimore, writing the opinion of this court, said:

"We have examined many cases and text-writers, recognizing that the power to punish for contempt is necessary to the existence of courts and the orderly conduct of business before them, and that in proper cases the summary exercise of such power is just and right; recognizing also that in all cases such exercise must be compatible

with civil .liberty and be used as an auxillary to the pure ends of justice. Nor are we unmindful of that care which characterizes this court in solving a question touching the propriety of the decisions of the presiding judge of a trial court in passing on the conduct of an officer of that court. We find ourselves unable to lose sight of the probable motives involved,—that of the judge to maintain exact order,—that of relator to protect the rights of his client."

As portrayed by the facts now before the court, we have failed to perceive that in the conduct of the relator specifically set forth which, under our conception of law, would confer upon the trial court the jurisdiction to enter a judgment of contempt. The motion for rehearing is, therefore, granted, and the relator ordered discharged.

*Relator discharged.*