**James Douglas THOMPSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44721.**

Court of Criminal Appeals of Texas.

April 19, 1972.

Rehearing Denied June 21, 1972.

---

Melvyn Carson Bruder, Dallas (Court appointed), for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for robbery. Appellant was found guilty by a jury, and punishment was assessed by the court at confinement for 35 years.

Appellant does not challenge the sufficiency of the evidence. Mr. and Mrs. Tarrer testified that they operated a grocery store in the city of Dallas. On December 14, 1969, two Negro males, one of whom was appellant, entered the store. Appellant approached Mrs. Tarrer, who was behind the cash register, and asked her for a pack of cigarettes. The other man went to the rear of the store. Mrs. Tarrer turned around in order to get the cigarettes. When she turned again to give the cigarettes to appellant, he stated, "This is a holdup," and "I want your money," and pointed a pistol at Mrs. Tarrer. Mrs. Tarrer refused to comply and shut the cash register drawer. An argument ensued between her and appellant, he insisting that she open the cash register, and she refusing. After several attempts, appellant succeeded in opening the cash register himself, and took the money from it. During this time, the other man was holding Mr. Tarrer at gunpoint in the rear of the store. After obtaining the money, both men fled from the store on foot. Mr. and Mrs. Tarrer followed in pursuit, Mr. Tarrer firing at the men with his pistol. A police officer who was passing in a patrol car observed the chase and pursued the two men, apprehending appellant's accomplice, who was Lovie Williams. Appellant was arrested several days later.

In his brief, appellant raises seven grounds of error. In his first two grounds, which will be considered together, he contends that the identification testimony of Mrs. Tarrer was inadmissible by virtue of having been the result of an illegal lineup. He contends that it was inadmissible because, (1) he was without counsel at the lineup at which he was identified by Mrs. Tarrer, and had not knowingly and voluntarily waived the right to have counsel present, and (2) because he was in custody at the time the lineup was held by virtue of an illegal arrest.

The case of Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), holds that testimony by a witness that he has identified a defendant at a lineup, if such lineup was illegal, is per se inadmissible. However, the case of United

States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), holds that the in-court identification of a defendant by a witness who has previously identified him in an illegal lineup is admissible if the State can demonstrate, by clear and convincing evidence, that the in-court identification was based upon observations of the defendant other than the lineup identification.

■ In the instant case, the State did not attempt to bolster Mrs. Tarrer's testimony with evidence of the lineup identification. The lineup was first mentioned in the presence of the jury only in response to appellant's questions asked on cross-examination of Mrs. Tarrer regarding her identification of appellant at the lineup. Appellant cannot be heard to complain of testimony which he has himself elicited. Therefore, the issue in this case is whether the in-court identification was the product of the lineup or was of independent origin. If the in-court identification was based on observations by the witness other than the lineup identification, then it is admissible if of independent origin, although the lineup may have been illegal. United States v. Wade, supra.

Prior to trial, a hearing was held outside the presence of the jury on the issue of the legality of the lineup and the basis for Mrs. Tarrer's in-court identification. Mrs. Tarrer testified that she had the opportunity to observe appellant for approximately five minutes at the time of the robbery. She testified that appellant and four other men, all Negroes, were shown to her and her husband in the lineup, and that she identified appellant as the man who had robbed her. She testified that no suggestive remarks were made to her by police officers at or before the lineup, and that no photographs were shown to her. She testified that she particularly remembered the shape of appellant's nose from observing it at the robbery.[1] Mrs. Tarrer testified that

two of the four participants in the lineup wore jail clothes, but she could not remember how appellant was dressed at the lineup. Her description, given at the time of the robbery, was that of a Negro male wearing a stocking on his head, not covering his face, with a broad, flat nose, and wearing a green shirt. She testified that appellant was not wearing a green shirt at the lineup. She testified that her identification was based upon seeing appellant at the robbery, and that she felt that she would have been able to recognize him in court even if she had not seen him in the lineup.

■ The factors to be considered, in determining the origin of an in-court identification include: (1) the prior opportunity to observe the alleged criminal act, (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description, (3) any identification prior to lineup of another person, (4) the identification by picture of the defendant prior to the lineup, (5) failure to identify the defendant on a prior occasion, and (6) the lapse of time between the alleged act and the lineup identification. United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Martinez v. State, 437 S.W.2d 842 (Tex.Cr.App.1969).

■ Applying this criteria to the present case, we find that Mrs. Tarrer had ample opportunity to observe appellant. There was no discrepancy between her pre-lineup description and the actual appearance of appellant. The record does not reflect that she had previously identified another person or that she had failed to identify appellant on a prior occasion. She was not shown photographs. The robbery occurred on December 14, 1969, and the lineup was held five days later. Trial commenced on February 10, 1970. Thus, it appears that the lapse of time between the robbery and the lineup was not so great as

1. Mrs. Tarrer testified that most of her customers were Negroes and that she was familiar with Negroid features. She admitted that broad noses are characteristic of Negroes, but that she particularly noticed the shape of appellant's nose.

to dull Mrs. Tarrer's memory. The evidence was sufficient to enable the trial court to conclude that the in-court identification was of independent origin.[2] Appellant's first and second grounds of error are overruled.

In his third and fourth grounds of error, appellant contends that the trial court erred in refusing to compel his co-indictee, Lovie Williams, to answer questions concerning an affidavit previously given by him in which he exculpated appellant.[3] Appellant also contends that the court erred in refusing to admit the affidavit in evidence.

The record reflects that appellant called Lovie Williams, who was under indictment for the same offense, as a witness. Williams appeared in the company of his counsel. He refused to answer any question put to him except that he stated his name and that he was in jail and under indictment. Outside the presence of the jury, he stated that it was true that he had given the affidavit to the district attorney's office. At this time, the court ruled that the affidavit was inadmissible, but stated that appellant could ask the witness any question he desired. Thereafter, in the presence of the jury, appellant asked Williams several questions, including whether Williams was guilty, and whether he (appellant) did not participate in the robbery. Williams refused to answer any of appellant's questions. Thereafter, on cross-examination, the State asked Williams several questions concerning his participation in the robbery for which appellant was on trial. Williams refused to answer any of the questions.

■ Although appellant did not request that the court compel Williams to testify, nevertheless, the court acted properly in not compelling him to do so. The Sixth Amendment to the United States Constitution, which guarantees the right of compulsory process for obtaining witnesses, protects the right of an accused to call a co-defendant as a witness. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed. 2d 1019 (1967). However, the right to call a co-defendant does not preclude the co-defendant from asserting his privilege against self-incrimination. Hall v. State, 475 S.W.2d 778 (Tex.Cr.App.1972); see also, Washington v. Texas, supra, at fn. 21; McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

■ Appellant contends that since Williams admitted giving the affidavit to the district attorney's office, he had waived his privilege. Had Williams also admitted the truth of the affidavit, we might be faced with a different situation. However, Williams only admitted giving the statement to the district attorney's office. He did not admit the truth of the statement. Therefore, Williams did not waive his privilege.

■ Likewise, the court did not err in refusing to admit the affidavit. The affidavit was hearsay and inadmissible. Ex parte Morriss, 110 Tex.Cr.R. 585, 10 S. W.2d 105 (Tex.Cr.App.1928). An exception to the general rule of exclusion of such declarations lies where (1) the declarant admits his guilt, (2) the State's case is based entirely upon circumstantial evidence, (3) the guilt of the defendant on trial is inconsistent with the guilt of the declarant, and (4) independent evidence shows that the declarant had the capability

2. The trial court did not enter written findings of fact, nor state into the record the reasons for admitting the identification testimony. In cases such as this, the trial court should *always* do so. However, since the court conducted a hearing on the issue, and since there was evidence to support a finding of admissibility, and appellant's motion to strike Mrs. Tarrer's testimony was overruled by the court, the court's action in overruling the motion was tantamount to a finding of admissibility as fact. Therefore, the failure to enter findings was not reversible error. Williams v. State, 477 S.W.2d 885 (Tex. Cr.App.1972).

3. In the affidavit, Williams did not admit his guilt, but merely stated that he was present at the place of the crime, and that appellant was not guilty.

to commit the act. Munoz v. State, 435 S.W.2d 500 (Tex.Cr.App.1968); Cameron v. State, 153 Tex.Cr.App. 29, 217 S.W.2d 23 (1949). In the instant case, the affidavit satisfies only the fourth criteria listed above.

■ Appellant contends that the affidavit was admissible for impeachment purposes. It is elementary that a witness must testify to some fact before he can be impeached. In this case, Williams refused to testify. Therefore, there was no testimony which was subject to impeachment. Appellant also cites certain cases [4] in which prior testimony of a witness who had been cross-examined at a prior proceeding was admitted where the witness later refused to testify. Such cases have no applicability in the present case, because here, no prior testimony was offered, but merely an extra-judicial statement. See United States v. Fiore, 443 F.2d 112 (2nd Cir. 1971).

Appellant's fifth ground of error is as follows:

"The prosecutor was guilty of bad faith which amounted to prosecutorial misconduct when he represented to the jury, by innuendo, that Lovie Williams could testify that the appellant was the second robber, if Lovie Williams had not taken the Fifth Amendment, when in fact the prosecutor had in his possession a statement from Lovie Williams which exculpated the appellant."

■ In the argument supporting grounds of error number three through six, appellant refers to pages 118–132 of the record. He does not point out that portion of the record to which he refers in the ground of error set forth above. The cross-examination of Williams by the State appears in the latter part of the above cited pages of the record, but nowhere in his brief does appellant point out the specific question(s) or statement(s) to which he refers. This ground of error

does not comply with Article 40.09, § 9, Vernon's Ann.C.C.P., and will not be considered by this Court. Thomas v. State, 468 S.W.2d 90 (Tex.Cr.App.1971); Nielssen v. State, 456 S.W.2d 928 (Tex.Cr.App. 1970).

In his sixth ground of error, appellant contends that the trial court erred in not permitting him to re-open his case and recall Williams as a witness, after he had rested. Appellant testified, outside the presence of the jury, that he had talked with Williams in the jail on the evening after he refused to testify (which was the night before), and that Williams had decided to testify in his favor.

■ Permitting a party to re-open is a matter within the discretion of the court. E. g., Perry v. State, 464 S.W.2d 660 (Tex.Cr.App.1971); Davis v. State, 463 S.W.2d 434 (Tex.Cr.App.1971). In light of the fact that Williams had once taken the stand, but would not testify in favor of appellant, and that he did so on advice of counsel, the court's refusal was not an abuse of discretion. See Hamilton v. State, 141 Tex.Cr.R. 614, 150 S.W.2d 395 (Tex.Cr.App.1941). Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant complains of the following argument by the prosecutor:

"So that is what we are talking about, Mr. Bruder comes up and he attacks me says my files are being hidden from him, and let me submit to you that this is, if you find this defendant guilty, if you find that we have proven our case beyond a reasonable doubt, that this is a two-hearing trial, two hearings, the State, at the second hearing, if you find the defendant guilty the State can bring more evidence.

"MR. BRUDER: We are going to object to that, your Honor.

---

4. United States v. Mobley, 421 F.2d 345 (5th Cir. 1970); United States v. Allen, 409 F.2d 611 (10th Cir. 1969).

"MR. LUCAS: If I can continue I will say that the Defendant's attorney, Mr. Bruder, can bring and present more evidence.

"MR. BRUDER: Objection, your Honor, he is talking about whatever they want to bring.

"MR. LUCAS: I didn't say what we would; I said what we could.

"MR. BRUDER: I still object.

"MR. LUCAS: Just what we could put on, or if we have something we can put it on.

"MR. BRUDER: I still object.

"THE COURT: The objection will be sustained.

"MR. BRUDER: I am going to ask that the jury be instructed to disregard the remarks of counsel for all purposes.

"THE COURT: You will disregard the remarks of counsel.

"MR. BRUDER: I am going to ask for a mistrial because these remarks are prejudicial and inflammatory.

"THE COURT: You will disregard anything said about as to what can or cannot be done in the second hearing or phase of the case.

"MR. LUCAS: Judge, I will submit the jury is entitled to know that either side can—

"MR. BRUDER: I am going to object to the remarks of counsel at this point.

"THE COURT: And you will not consider any of the remarks for any purposes, what has been said along that line.

"MR. BRUDER: We re-urger our motion for a mistrial, Judge.

"THE COURT: The motion for mistrial will be overruled."

Appellant relies upon the case of Bowers v. State, 171 Tex.Cr.R. 345, 350 S.W. 2d 27 (Tex.Cr.App.1961), as compelling a reversal in the present case. In Bowers v. State, supra, the argument of the prosecutor was held to convey to the jury that he had additional evidence which he would show the jury after the conclusion of the case, and as such, was held to be reversible error.

■ We feel that the argument in the instant case is distinguishable from that in Bowers v. State, supra. In the instant case, it is obvious that the prosecutor was only referring to the general right of both parties to present evidence at the punishment stage of the trial, and as such, the argument was not reversible error. See Thomas v. State, 458 S.W.2d 470 (Tex.Cr.App.1970); Schulz v. State, 446 S.W.2d 872 (Tex.Cr.App.1969).

■ The test as to whether an improper argument constitutes reversible error is whether, (1) the argument is manifestly improper, harmful and prejudicial, or (2) it is violative of a statute or, (3) it injects a new and harmful fact into the case. Vineyard v. State, 96 Tex.Cr.R. 401, 257 S.W. 548 (Tex.Cr.App.1922). Applying this test to the argument in the present case, we find no reversible error, Mims v. State, 466 S.W.2d 317 (Tex.Cr.App.1971), especially in light of the court's instruction to the jury to disregard the remark. See Crowe v. State, 400 S.W.2d 766 (Tex. Cr.App.1966). Appellant's seventh ground of error is overruled.

■ In addition to his grounds of error, appellant sets forth four "possible errors." Each point consists of a reference to some action in the record without explanation of why the action was improper. The points refer to a page of the record, but cite no authority. The points will not be reviewed. Art. 40.09, § 9, V.A.C.C.P.; Webb v. State, 480 S.W. 2d 398 (Tex.Cr.App.1972); Gonzalez v.

State, 468 S.W.2d 85 (Tex.Cr.App.1971); Alexander v. State, 458 S.W.2d 656 (Tex. Cr.App.1970).

The judgment is affirmed.