**Emmit BRAGER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00040–CR.**

Court of Appeals of Texas,
Dallas.

March 9, 1983.

Discretionary Review Refused
June 8, 1983.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty., R.K. Weaver, Asst. Dist. Atty., Dallas, for appellee.

Before STOREY, FISH and GUILLOT, JJ.

GUILLOT, Justice.

This is an appeal from a conviction of aggravated robbery for which the jury assessed punishment at life imprisonment. We affirm.

Appellant does not challenge the sufficiency of the evidence, but a précis of the facts will put the grounds of error in their proper perspective.

Marva Boyd testified that in the early morning of February 3, 1980, she and Kenneth Green were sitting in her family's apartment watching television when someone knocked on the front door. She went to the door and asked who was there. The appellant responded by asking if Annie lived there and, because Annie Boyd did live there, Marva asked the appellant to identify himself. Appellant replied that his name was "Emmit." Then, as Marva opened the door slightly, appellant forced his way in, pointed a handgun at her, and demanded money.

Marva testified that appellant grabbed her around the throat with his arm; took money from her mother's purse; stole two television sets; pistol whipped her; kicked Kenneth Green in the hip; and threatened to kill them. The robbery took about twenty minutes, and, during that time, Marva,

Kenneth, and Wayne Boyd all observed appellant face to face in a well lit room. On several occasions appellant was less than a foot away from the witnesses.

While there was a slight discrepancy among the witnesses as to whether appellant wore a long or short sleeve shirt, nevertheless, both Marva and Kenneth identified appellant in a photo line-up and again at trial. Just before the State rested, Marva testified that she had seen appellant once before in September 1979 when he had robbed her for the first time. Appellant then took the stand and testified that he was in a federal prison in Marion, Illinois in September 1979 and wasn't released until January 1980.

After the State rested, appellant's counsel made a motion that the State provide any information about defendant's incarceration during 1979 in the Marion Correctional Institute. The court granted the motion and the State provided an FBI "rap sheet" which showed data furnished by the FBI according to fingerprint contributors. The sheet reveals that one contributor was "US Pen. Marion IL," and, on the same line under "disposition," it shows "8 yrs 1–16–80 MR."

Appellant's counsel then requested a delay to obtain a representative of the United States Justice Department to "testify that these are business records, and prove this up." The trial judge, concerned about delaying the trial, inquired of appellant's counsel as to when counsel learned that Marva Boyd would testify that she had seen his client in September 1979. Counsel replied that he had learned of such proposed testimony in the summer (trial was in September 1980). He also had a record of appellant's convictions but never asked appellant if he was incarcerated in September 1979. Nevertheless, the trial judge granted an hour and a half recess. Despite the recess, appellant's counsel was unable to produce a witness whom he could use as a vehicle to introduce the FBI "rap sheet" as a business record.

In three grounds of error, appellant contends:

1. that the trial court committed reversible error in not requiring the State to make a showing of good faith in regard to their failure to reveal exculpatory evidence pertaining to the appellant's guilt or innocence;

2. that the trial court erred in not granting appellant's motion for a mistrial in the face of prosecutorial misconduct during jury argument; and

3. that the trial judge erred in allowing in the trial any testimony concerning the identification of the appellant.

We will discuss the alleged failure to reveal exculpatory evidence first.

At the outset we need to put this case in its proper perspective. Although appellant contends that this is a case in which we should apply the holding in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the holding in *Brady* only applies to discovery by defense counsel, after trial, of facts which had been known to the prosecutor but unknown to the defense. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Here the discovery of appellant's incarceration occurred during trial, and appellant was as aware of his incarceration—if not painfully more so—as was the prosecutor. Moreover, the prosecutor did not withhold the information he had. It is clear from the record that the prosecution tendered what they had in their file that might be relevant to the defense. The FBI "rap sheet" plainly indicated fingerprint contributors and implicitly indicated that appellant was released from incarceration in Marion, Illinois on January 16, 1980 ("1–16–80 MR").

Viewing the entire record we cannot hold that the FBI "rap sheet" was exculpatory as envisioned in *Brady,* because it did not tend to show that the appellant was innocent. It was relevant, however, for impeaching Marva Boyd and could be obtained under a proper motion. *See Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). The fact that Marva Boyd was mistaken about having seen appellant in September 1979

does not require a new trial when the record shows beyond a reasonable doubt that appellant is guilty as charged. *Agurs,* 427 U.S. at 113–14, 96 S.Ct. at 2402. We overrule this ground.

In his next ground, appellant contends that the trial court committed error in allowing the prosecutor to argue that there was no documentary evidence admitted which substantiated appellant's statement that he was incarcerated in September 1979. The prosecutor was correct in his argument because trial counsel failed to get his tendered evidence admitted. We overrule this ground.

In his final ground, appellant contends that the trial court erred in allowing three witnesses to identify him in court. There was no question about the certainty of the witnesses' identification of appellant as the man who committed the offense, the prior opportunity to observe the criminal act, the lack of discrepancy in appellant's actual description, and the appellant being the only man identified. See *Thompson v. State,* 480 S.W.2d 624, 627 (Tex.Cr.App. 1972). There is no allegation that the in-court identifications were tainted in any way. We overrule this ground.

Affirmed.