# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00531-CR

**Louis James Stenson, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NO. 1011810, HONORABLE BILL BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Louis James Stenson, Jr. of aggravated robbery and unlawful restraint with substantial risk of serious bodily injury. Tex. Pen. Code Ann. §§ 29.03, 20.02 (West 2003). The jury determined that Stenson used a deadly weapon in the commission of both offenses. After Stenson pleaded true to the enhancement allegations, the judge assessed punishment at life imprisonment on both counts, allowing the sentences to run concurrently. Stenson raises two points of error on appeal. In his first point of error, Stenson contends that the trial court erred in proceeding with trial when Stenson had been served with the indictment less than ten days before the trial. In his second point of error, Stenson argues that the trial court erred in not suppressing the alleged victim's pretrial identification of Stenson in a photographic lineup. For the reasons that follow, we affirm the judgments of the trial court.

## BACKGROUND

On the morning of August 24, 2001, Stenson approached Florine Ponce while she worked in her garden outside her Manor, Texas, home. Stenson asked Ponce for a bucket of water and a coat hanger, stating that his car had stalled down the street. Ponce directed Stenson to a bucket in a nearby lot and proceeded through the back door of her home to retrieve a coat hanger, locking the door behind her. Ponce exited through the front door of her home, handed Stenson the coat hanger, and told him he could use her garden hose for water.

After Ponce turned her back to Stenson to return inside, Stenson attacked Ponce from behind, hitting her and knocking her down. He demanded money and a car and threatened to kill her. Stenson continued to hit Ponce in the face and pull her hair as Ponce resisted by screaming and hitting and kicking Stenson.

During the struggle, Stenson picked Ponce off the ground by her bra strap and put her in a headlock. He proceeded to drag Ponce to the rear of her home and into her screened-in back porch. Upon entering the back porch area, Stenson continued to hold Ponce in a headlock, causing her to scratch her legs and feel dizzy and lightheaded. Ponce attempted to squeeze Stenson's genitals to escape, but this seemed to have no effect on Stenson. Stenson threw Ponce against a bench. He pulled the cord off of an electric fan in the screened-in porch and continued his demands for money. As Ponce began to walk away to retrieve the money, Stenson pulled her back by her hair and shoved her towards the back door leading into her home. Because the door was locked, Stenson kicked the door in and pushed Ponce inside the house.

2

Once inside, Stenson continued to hit Ponce and demand money and valuables. Stenson found Ponce's son's wallet and continued pressing Ponce for more money. Ponce directed Stenson to her bedroom and gave him a jar of coins. In the bedroom, Stenson threatened to kill Ponce with an electric screwdriver if she did not give him money. Stenson pulled a cord off a scanner and tied Ponce's arms behind her back. He stuffed a pair of panties in Ponce's mouth and tied a belt around her head to keep the panties in place. Stenson pushed Ponce onto the bed, tied her feet together, then threw her in the bedroom closet and shut the door. Ponce freed herself, but Stenson confronted her at the bedroom door, tied her up, and again shut her in the closet. Ponce tried to escape from the closet a second time, but Stenson immediately slammed the closet door. On Ponce's third attempt to free herself, she was unable to open the closet door. While Ponce was confined in the closet, she heard Stenson continue to search her home.

Stenson departed in Ponce's car with her purse and other money he had obtained from her home. Ponce was found in the closet by a neighbor who had been alerted to noises of a disturbance. On August 30, 2001, Stenson was arrested by police in Seguin, Texas, while driving Ponce's vehicle.

A jury convicted Stenson of aggravated robbery and unlawful restraint with substantial risk of serious bodily injury, finding that Stenson used a deadly weapon in the commission of both offenses. In the punishment phase of the trial, Stenson pleaded true to the enhancement allegations that he had been convicted of aggravated assault in 1992, theft of property in 1986, and burglary of a motor vehicle in 1985. The court sentenced Stenson to life imprisonment on both counts, allowing the sentences to run concurrently.

**DISCUSSION**

*Indictment served less than ten days before trial*

In his first point of error, Stenson claims that the trial court erred in allowing the trial to go forward when the indictment had been served on Stenson less than ten days before the trial date in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

The State contends that Stenson has procedurally defaulted on his Fifth, Sixth, and Fourteenth Amendment constitutional claims on appeal because he did not object on such grounds at trial. The only ground Stenson raised at trial was a violation of Texas Code of Criminal Procedure article 27.11. A party must generally object with specificity at the trial court to preserve an error for appeal. *See* Tex. R. App. P. 33.1(a) (West 2003). This rule generally applies even to due process violations. *Jaenicke v. State*, 109 S.W.3d 793, 795 n.3 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see Henderson v. State*, 962 S.W.2d 544, 558 (Tex. Crim. App. 1997). Therefore, Stenson did not preserve his due process claims for appeal if he did not specifically object on these grounds at trial. In a pretrial hearing on service of the indictment, Stenson's counsel asked the trial judge if he was "denying [the] request to postpone trial in accordance with [defendant's] right to ten-days notice after service of indictment." During preliminary proceedings at trial, Stenson's attorney again asked for a postponement of trial because "defendant was not given his full ten days notice." Because notice is an important component of due process and the purpose of article 27.11 conforms with due process principles, in the interest of justice we will construe Stenson's objection broadly and examine his constitutional claims. *See Powell v. State of Alabama*, 287 U.S. 45, 64 (1932)

4

(notice is basic element of constitutional requirement of due process); *Papakostas v. State*, 145 S.W.3d 723, 727 (Tex. App.—Corpus Christi 2004, no pet.) (due process complaint arising from denial of motion for continuance preserved by defense counsel's remark at trial that defendant had no notice of the hearing because notice is essential component of due process); *see also Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990) (court construes points of error liberally to adjudicate justly, fairly and equitably the rights of litigants). We will also analyze Stenson's claim under article 27.11 because Stenson's brief is consistent with his objection at trial to a violation of the article.

The standard of review for error in denying a motion for continuance is abuse of discretion. *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986). If a trial court operates within the boundaries of its discretion, we will not disturb its ruling on appeal. *McFarland v. State*, 845 S.W.2d 824, 837-38 (Tex. Crim. App. 1992).

Texas has specific right-to-time statutes that indicate how soon a case can proceed to trial after service of the indictment on the accused. Texas Code of Criminal Procedure article 27.11 states that "[i]n all cases the defendant shall be allowed ten entire days, exclusive of all fractions of a day after his arrest, and during the term of the court, to file written pleadings." Tex. Code Crim. Proc. Ann. art. 27.11 (West 1989). Article 27.12 provides that "[i]n cases where the defendant is entitled to be served with a copy of the indictment, he shall be allowed the ten days time mentioned in the preceding Article to file written pleadings after such service." Tex. Code Crim. Proc. Ann. art. 27.12 (West 1989). Stenson was entitled to service of a copy of the indictment pursuant to article 25.01, which states:

5

In every case of felony, when the accused is in custody, or as soon as he may be arrested, the clerk of the court where an indictment has been presented shall immediately make a certified copy of the same, and deliver such copy to the sheriff, together with a writ directed to such sheriff, commanding him forthwith to deliver such certified copy to the accused.

Tex. Code Crim. Proc. Ann. art. 25.01 (West 1989).

The purpose of these right-to-time statutes is to afford the accused or his counsel the opportunity to carefully examine the formal accusation and to prepare and file any necessary pleadings related to the accusation. *Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983); *Keener v. State*, 103 S.W. 904, 906 (Tex. Crim. App. 1907) (decided under predecessor statute to article 27.12 which entitled defendant to two days rather than ten); *Roberts v. State*, 93 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). When an accused timely and properly invokes his rights under the statute, the court must afford him the statutory ten days. *Oliver*, 646 S.W.2d at 245; *Roberts*, 93 S.W.3d at 532. However, the right-to-time statutes are not properly invoked when the objectives of the statute have been achieved. *Roberts*, 93 S.W.3d at 532; *see Keener*, 103 S.W. at 906. We must assess whether the objectives of the right-to-time statutes have been achieved in the case before us.

Stenson was formally served with a certified copy of his indictment in this matter on July 31, 2003 and trial commenced on August 4, 2003. In a pretrial hearing on August 4, 2003, Stenson objected to the commencement of trial because ten days had not passed from service of the relevant indictment as allowed in Texas Code of Criminal Procedure article 27.11.

At this hearing, Stenson admitted to being aware of the indictment and his trial counsel acknowledged that he had been given ample time to prepare for trial. Stenson also stated

6

that he had been in court numerous times before in regard to the case in question and was aware of several previous dates when the court originally set the case for trial.

The record reveals that the indictment in this case was returned on October 22, 2001. Stenson was arrested and brought before a magistrate on February 15, 2002. Attorney Greg Zaney was appointed to represent Stenson on February 20, 2002. On March 12, 2002, Stenson's attorneys filed a number of motions in this case, including two motions in limine, a motion for discovery, a motion to suppress evidence, and a motion for discovery of exculpatory and mitigating evidence. On April 18, 2002, the State filed a settlement offer outlining the terms of a possible plea bargain for the attack on Ponce. On May 6, 2002, the trial court conducted a pretrial hearing in this case at which appellant and his attorney were present. At this hearing, Ponce testified regarding the attack at issue in this case.

On August 23, 2002, attorney Tom Weber, who later represented Stenson at trial, was appointed to represent Stenson. Weber filed motions and other documents for Stenson in this case including a motion in limine, a request for notice of extraneous offenses, the defendant's election for the jury to assess punishment, a motion to suppress evidence, and a request for notice under Texas Code of Criminal Procedure Rule 404(b) and Article 37.07(g). The docket sheet indicates that the case had several jury trial settings in the winter and spring of 2003.

The court of criminal appeals has held that the right-to-time statutes are not properly invoked on facts similar to those in the record before us. *See Wray v. State*, 232 S.W. 808, 809-10 (Tex. Crim. App. 1921); *Keener*, 103 S.W. at 906; *Tatmon v. State*, 786 S.W.2d 523, 524-26 (Tex. App.—Austin 1990) (holding trial court did not err in overruling right-to-time objection when

7

defendant's attorney obtained copy of the indictment, had more than ten days to prepare for trial, filed various pretrial motions, and discussed indictment with defendant), *aff'd on other grounds*, 815 S.W.2d 588 (Tex. Crim. App. 1991). In *Keener*, defendant's counsel obtained a copy of the indictment approximately three months before trial and the defense had an opportunity to prepare all necessary motions during a nine-month period. The court conceded that this statute is mandatory but still required "a reasonable construction so as to protect appellant's rights, while at the same time not obstructing or delaying trials." *Keener*, 103 S.W. at 906. The court of criminal appeals held that the defendant's objection lacked merit because the objectives of the right-to-time statute had been achieved and because the defendant appeared to be invoking the statute simply for delay. *See Keener*, 103 S.W. at 905-06. In *Wray*, the court of criminal appeals found no error in the trial court's denial of defendant's right-to-time objection where defendant's counsel received a copy of the indictment more than a month before trial, defendant and his attorney had conferred about the case, and defendant's attorney advised defendant of the nature of the accusation against him. *See* 232 S.W. at 810.

In addition, in *Roberts*, the Fourteenth District Court of Appeals held that the trial court did not abuse its discretion in denying a motion for continuance where, despite defendant being served with the formal indictment on the first day of trial, defendant's counsel informed the trial court that she had reviewed the indictment on several occasions, discussed the charges with her client, and acknowledged that she had sufficient time to prepare for trial. 93 S.W.3d at 532-33. In addition, neither the defendant nor his counsel requested an opportunity to file any additional motions or pleadings. *Id.* at 533.

8

Stenson asks the court to distinguish these cases from his case because three indictments, each for separate incidents, were pending against him. Stenson argues that he should have been accorded a continuance to prepare for the case that was actually going forward. This argument is not convincing as Stenson's attorney stated that he had ample time to prepare for trial on the specific indictment proceeding to trial and did not raise the issue of three pending indictments at trial.

The trial court did not abuse its discretion in this case by denying Stenson's motion for continuance and proceeding with trial. Stenson was aware of the indictment despite the fact that he had not been formally served; he attended a pretrial hearing over a year before trial in which Ponce testified to the events that were to be tried in this case. Stenson's counsel expressed that he had ample time to prepare for trial. In addition, Stenson's counsel previously filed numerous motions on Stenson's behalf and did not seek to file any new motions or pleadings. The objectives of the right-to-time statutes have been met in this case. Assuming Stenson preserved the constitutional claims he now raises, such claims lack merit. The facts of this case do not indicate that Stenson's rights to notice and due process under the United States Constitution were violated. This point of error is overruled.

*Pretrial identification*

In his second point of error, Stenson alleges that the trial court erred in failing to suppress Ponce's pretrial identification of Stenson in a photographic lineup because the pretrial procedure was impermissibly suggestive.

The Manor Chief of Police and another officer conducted the pretrial identification procedure on August 31, 2001, seven days after the attack on Ponce. During the procedure, the two officers told Ponce they were going to show her pictures of a possible assailant. They explained that they were not going to guide her and that she could take her time. They instructed her, in the event she recognized the assailant, to point at that person and initial and date the photograph. The police chief also stated that he believed a possible suspect was in the photo lineup, though Ponce does not remember such a statement. Ponce testified that the officers assured her that she need not recognize the assailant and that it was alright if she could not identify him in the photo spread. When police revealed the photo array to Ponce she immediately pointed to Stenson's picture and began crying.

Police compiled the photo array by using a photograph of Stenson taken following his arrest on August 30, 2001 and obtaining five computer-generated photographs from the Austin Police Department database that matched Ponce's description of the assailant. Police Officer Wesley Doss copied the six photographs to create a one-page photo array for Ponce to view.

Stenson asserts the pretrial identification was impermissibly suggestive for two reasons: (1) the background and texture of his photograph differed from others in the array and he was the only man pictured with a beard and a mustache, and (2) the chief of police informed Ponce that the person he believed to be the assailant was present in the photo array. Stenson asks us to consider whether the pretrial identification procedure utilized in this case was impermissibly suggestive and should have been suppressed by the trial court.

Stenson contends in this appeal that the trial court erred in failing to suppress Ponce's pretrial identification of Stenson in the photo array. Stenson objected to the admission of the array

10

in a pretrial hearing and during the State's examination of Manor Chief of Police Robert Snyder; however, Stenson's counsel introduced the photo array into evidence as Defendant's Exhibit 1 when he cross-examined Ponce. Because of this admission, he cannot complain on appeal of admission of that evidence. *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988); *see Thompson v. State*, 480 S.W.2d 624, 627 (Tex. Crim. App. 1972). In the interest of justice, however, we will treat Stenson's point of error as a complaint that the trial court erroneously allowed Ponce to identify appellant before the jury during trial because her in-court identification had been tainted by an impermissibly suggestive pretrial identification procedure.

In reviewing a motion to suppress an in-court identification due to an impermissibly suggestive pretrial identification procedure, we give almost total deference to the trial court's findings of fact. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). As to the trial court's findings on mixed questions of law and fact, the standard of review depends on whether the facts turn on an evaluation of credibility and demeanor. *Id.* Whether a photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). Accordingly, we will apply a *de novo* standard of review. *Moore v. State*, 140 S.W.3d 720, 730 (Tex. App.—Austin 2004, pet. ref'd).

The United States Supreme Court has held that a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the defendant due process of law. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967);

11

*Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995); *Webb*, 760 S.W.2d at 269; *Moore*, 140 S.W.3d at 730. The Supreme Court formulated a two-step analysis to determine the admissibility of an in-court identification following a pretrial identification: (1) whether the out-of-court identification procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley*, 906 S.W.2d at 33; *Moore*, 140 S.W.3d at 730. An analysis under these two steps requires an examination of the totality of the circumstances surrounding a particular case and a determination of the reliability of the identification. *Barley*, 906 S.W.2d at 33. Each case must be considered on its own facts. *Simmons*, 390 U.S. at 384.

Under the first step of the analysis, even if a pretrial procedure is suggestive, it may not be impermissibly so. *Barley*, 906 S.W.2d at 33; *Moore*, 140 S.W.3d at 730. Suggestiveness may be created by the manner in which the pretrial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the lineup or photo array. *Barley*, 906 S.W.2d at 33; *see Ibarra v. State*, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999) (police stating that suspect was included in photo array was suggestive but not impermissibly so). Suggestiveness may also be created by the content of the array itself if the suspect is the only individual closely resembling the pre-procedure description. *Barley*, 906 S.W.2d at 33. Every photographic lineup should contain individuals who fit the rough description of the suspect, but it is not essential that all individuals be identical. *Herrera v. State*, 682 S.W.2d 313, 319 (Tex. Crim. App. 1984); *Brown v. State*, 64 S.W.3d 94, 100 (Tex. App.—Austin 2001, no pet.). Neither due process nor common sense requires such exactitude. *Turner v. State*, 600 S.W.2d 927, 933 (Tex.

12

Crim. App. 1980). However problematic photo lineups may be, they remain useful. *Brown*, 64 S.W.3d at 100. Mere showing of pictures to a witness prior to an in-court identification is not a denial of due process. *Proctor v. State*, 465 S.W.2d 759, 764 (Tex. Crim. App. 1971).

There are numerous examples of what does and does not constitute impermissible suggestiveness. For example, a lineup that consists of five persons, two of whom have beards and who are not physically close to the suspect in size and hair color is not impermissibly suggestive. *Turner*, 600 S.W.2d at 932; *Brown*, 64 S.W.3d at 100. The same is true even if a defendant appears older than others in the lineup. *Williams v. State*, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984); *Brown*, 64 S.W.3d at 100. On the other hand, a lineup will be impermissibly suggestive if the defendant was the only white male in the photographic array and the other photos were of Mexican-American males. *Brown*, 64 S.W.3d at 100; *Tapley v. State*, 673 S.W.2d 284, 286 (Tex. App.—San Antonio 1984, writ ref'd).

The pretrial identification was not impermissibly suggestive in this case. The array contained six photos, all of young African-American males with short hair and similar facial features. Despite Stenson's claim that he was the only man pictured with a beard and a mustache, several of the men pictured appear to have facial hair in accord with Ponce's description of the assailant. Differing facial hair is insufficient on its own to conclude that a photo array is impermissibly suggestive. *See Turner*, 600 S.W.2d at 932. In regard to the appearance of the photographs, though Officer Doss testified that Stenson's picture had a different background and texture because it was copied from an original photograph instead of a computer-generated image, Doss felt including a new photo of Stenson was necessary due to the change in Stenson's appearance

13

from previous photos contained in the police department database. In addition, while the police chief stated that he believed the suspect was in the photo array, Ponce did not remember such a statement, and such a statement alone is insufficient to render a pretrial identification procedure impermissibly suggestive. *See Webb*, 760 S.W.2d at 272; *Ibarra*, 11 S.W.3d at 196. At a pretrial hearing on the admission of the pretrial identification, Ponce stated that "[the police] said if you can't identify him or if he is not there, it is okay[.]" These features of the pretrial identification do not lead us to conclude that it was impermissibly suggestive.

Even if the pretrial identification was impermissibly suggestive, it would have to have created a very substantial likelihood for irreparable misidentification to warrant reversal of the conviction. *See Simmons*, 390 U.S. at 384. An impermissibly suggestive pretrial procedure will not make an in-court identification unreliable if the totality of the circumstances reveals no substantial likelihood of misidentification. *Ibarra*, 11 S.W.3d at 195; *Webb*, 760 S.W.2d at 269.

In determining whether a very substantial likelihood for irreparable misidentification has been created, we assess reliability by considering several non-exclusive factors enumerated by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). These factors include: (1) the witness's opportunity to view the criminal act, (2) the witness's degree of attention, (3) the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. *Id.*; *Ibarra*, 11 S.W.3d at 195. These factors are to be treated as issues of fact and reviewed in the light most favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195; *Loserth*, 963 S.W.3d at 773; *Moore*, 140 S.W.3d at 731. The five factors, viewed in this manner, are then reviewed *de novo* against "the corrupting effect" of the suggestive pretrial

14

identification procedure. *Ibarra*, 11 S.W.3d at 195-96; *Loserth*, 963 S.W.2d at 773-74; *Moore*, 140 S.W.3d at 731. If indicia of reliability outweigh suggestiveness then an identification is admissible. *Barley*, 906 S.W.2d at 34.

First, we conclude that Ponce had more than an adequate opportunity to view Stenson at the time of the crime. Ponce testified that she viewed Stenson as he was walking toward her home and when they were face to face on several occasions throughout the attack. The attack occurred on a bright, sunny morning, providing Ponce a clear view of Stenson's face. At trial, Ponce answered affirmatively when asked if she got a good look at her attacker's face.

Second, the evidence showed that Ponce was highly attentive during the incident. Ponce was not a casual observer to the crime but Stenson's victim. Her attention was focused on Stenson throughout the attack as he was the sole assailant.

Third, Ponce accurately described Stenson prior to the pretrial identification. Following the attack, Ponce provided police with a detailed description of Stenson, noting his physical and facial features and the clothes he was wearing during the incident. She stated that the suspect was a black male, approximately 20-25 years of age, 5'7" to 5' 10" in height, wearing a black muscle shirt, black basketball shorts and black tennis shoes. Ponce also advised police that the suspect possibly had a small mustache and tattoos on his arms. A forensic sketch artist attempted to draw Ponce's description, but Ponce was not satisfied with the drawing that was created, and said the sketch artist did not correctly depict her attacker. Though Stenson was thirty-three years old at the time of the attack, this difference alone does not render Ponce's description inaccurate.

Fourth, Ponce identified Stenson with a high level of certainty at the time of the pretrial procedure. During the pretrial identification, Ponce immediately pointed at Stenson's photograph and began crying. Ponce also positively identified Stenson at trial as the perpetrator and noted the difference in his weight between the time of the attack and trial. Ponce never wavered in her certainty that Stenson was her assailant, consistently identifying him both inside and outside of court. In court, when asked if she had any doubt as to whether Stenson was the assailant, she replied that she did not.

Fifth, very little time had passed between the crime and the pretrial identification. Ponce identified Stenson in a photo array seven days after the attack at her home. This span of time does not detract from the reliability of Ponce's identification of Stenson in the photo array.

Viewing the facts of this case in the light most favorable to the trial court's ruling, we conclude from the totality of the circumstances that the pretrial identification was not impermissibly suggestive. Assuming arguendo that it was, the *Biggers* reliability factors were sufficiently met; weighing the evidence of reliability against the suggestiveness of the pretrial identification procedure, no substantial risk of irreparable misidentification was created so as to deny Stenson due process. The trial court did not err in denying Stenson's motion to suppress the pretrial identification. This point of error is overruled.

**CONCLUSION**

We hold that the trial court did not err in allowing Stenson's trial to proceed when the indictment had been served on Stenson less than ten days before the trial date as the objectives of the right-to-time statutes have been achieved. In addition, we conclude that the trial court did not

16

err in denying Stenson's motion to suppress Ponce's pretrial identification of Stenson in a photo lineup.  Accordingly, we affirm the judgments of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   March 24, 2005

Do Not Publish

17