Lionel TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 60495.

Court of Criminal Appeals of Texas, Panel No. 1.

April 15, 1981.

Kenneth N. Price, Azle, for appellant.

Mac Smith, Dist. Atty., and Dan Carney, Asst. Dist. Atty., Weatherford, Robert Huttash, State's Atty., Austin, for State.

Before ONION, P. J., and ROBERTS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated rape. Punishment was assessed at imprisonment for 99 years.

Initially appellant contends that the trial court erred in denying his motion to suppress the complainant's in-court identification of him as the perpetrator of the rape. He contends that the identification was the result of "unfair influence."

The testimony at the motion to suppress hearing revealed the following. On the night of December 29, 1976, the complaining witness responded to a knock on the front door. She turned on an outdoor floodlight and could see a man at the door. The victim also stated that she had several lights on in the house as well.

This man asked directions to another person's house and also asked to use the restroom. The complainant could not give the directions and also denied entry into the house. The attacker then forcibly entered the house. He then beat, raped, and robbed the complainant. The attacker stayed in the house at least thirty minutes. The witness was able to see her attacker clearly.

It was also established that approximately two weeks after the crime, on January 11, 1977, the complainant examined six books of "mug shots" but could not identify her assailant. The officer presenting these photos stated that as the witness leafed through the books, "[s]he would make some comment about facial features or hair, or she would eliminate each one of them. . . ." The next day she was shown ten more photos, also to no avail.

On February 4, 1977, a little over a month after the offense a police officer took eleven more photos for the complainant to examine. This police officer testified that she was able to select one or two of the pictures as that of her attacker. The officer believed she selected two profile photos of the appellant placed in the eleven photo display.

This photographic identification procedure forms the basis of the first ground of error. Of the eleven pictures taken to the complainant, seven were black and white "mug shot type" photos of men dressed in street clothing. The other four were color "Polaroid" shots. Of the four color shots, three were of the appellant dressed in his jail clothes. The fourth color photo was of another suspect; this individual was dressed in a full length denim coat.

At trial the complainant was permitted to make a positive in-court identification of the appellant. The witness stated that this was based upon her independent recollection of the events of the night of the offense and not from any pre-trial identification procedure conducted by police.

In *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Supreme Court stated the general rule in cases such as the one before us:

"[W]e hold that such [a] case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic

identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Under this rule the photographic display must be "impermissibly suggestive" and "give rise to a substantial likelihood of misidentification." *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Cr.App.).

■ In the instant case, out of an array of eleven photos, appellant's picture appeared three times. His photo was further emphasized by the fact that these three photos were color shots. Further, appellant was pictured in his jail clothes, whereas the others were pictured in street clothes. We find that such a display is "impermissibly suggestive" under *Simmons* and *Coleman*; however, as *Coleman* indicates we must now consider whether this display gave rise to a "substantial likelihood of misidentification."

■ This analysis must begin with the rule of *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App.); that is, a witness' in-court identification which is independent of any pre-trial identification procedures is admissible. Under *Thompson*, the following factors are used in determining the origin of an in-court identification:

(1) the prior opportunity to observe the alleged criminal act

(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description

(3) any identification prior to lineup of another person

(4) the identification by picture of the defendant prior to the lineup

(5) failure to identify the defendant on a prior occasion, and

(6) the lapse of time between the alleged act and the lineup identification.

In the instant case the record reveals that the witness had the opportunity to observe her assailant in a lighted room for approximately thirty minutes during the attack. It also revealed that the victim never identified anyone other than appellant and that the witness meticulously screened all the many photos presented to her before identifying the appellant. Finally, only a month lapsed between the commission of the offense and the identification of appellant.

■ These facts satisfy us of the independent origin of the complainant's identification. When viewed under the totality of the circumstances, this pre-trial procedure, complained of on appeal, was not so defective as to lead to a substantial likelihood of misidentification. Cf. *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Cr.App.) (where only two photos, both of defendant, were shown to witness, and witness indicates that his in-court identification is based upon that suggestive display, identification should be suppressed).

Appellant next contends that the trial court erred in failing to suppress the in-court identification because he was not afforded his right to counsel at a one man "show-up" at his jail cell. The record shows that after the complainant identified appellant, she stated that she wanted to go to the jail to hear appellant's voice, "to be sure." [1] At the jail she heard his voice, viewed him for one or two seconds and stated, "That's him."

The appellant was in the Parker County jail due to a formal complaint filed against him on February 3, 1977, the day *before* the show-up in question. He was also arraigned on this day. The charge which caused this adversary judicial proceeding against appellant was *attempted indecency with a child* in Parker County. Hence, as to that charge, unquestionably, appellant's Sixth Amendment right to counsel had attached. See *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

At issue here, however, is appellant's Sixth Amendment right to counsel at a pre-trial one-on-one show-up for an unrelat-

---

1. The officer stated he "might have" indicated to the witness that the person she identified was in custody.

ed offense, one for which no formal adversary judicial proceedings had commenced. We find that appellant has demonstrated no violation of his Sixth Amendment right to counsel. The fact that appellant faced adversary judicial proceedings for attempted indecency with a child is not relevant to a determination of his right to counsel for the aggravated rape, the offense for which he was identified at the show-up. As the Fifth Circuit, in a similar case, stated:

"The identification was not used in the other proceeding. Only as to that charge had defendant's right to counsel matured. Since the Government had not 'committed itself to prosecute' defendant for this offense at the time of the lineup, his Sixth Amendment claim is without merit. *Moore v. Illinois,* 434 U.S. 220, 228, 98 S.Ct. 458, [464], 54 L.Ed.2d 424 (1977)."

*United States v. Tyler,* 592 F.2d 261, 263 (5th Cir. 1979).

So here, although appellant had, under the Sixth Amendment, a right to counsel for the attempted indecency with a child offense, under the facts of this case, there was no such right at the show-up for the aggravated rape offense.

Further, although not assigned as error in his brief, we have in the interest of justice scrutinized the circumstances surrounding the show-up to determine whether they reveal a violation of due process under *Banks v. State,* 530 S.W.2d 940, 942 (Tex.Cr. App.). As we have discussed earlier, the complainant has demonstrated under *Thompson v. State,* supra, that her identification of the appellant stemmed from her independent recollection of the offense and not from any pre-trial identification procedures. There is no need to repeat an analysis of the *Thompson* factors; suffice it to say that the facts reveal no violation of due process. *Banks v. State,* supra at 942.

Appellant next contends that the court erred in allowing a medical expert to give his opinion as to whether penetration occurred. This opinion was elicited by the State on direct examination of the medical expert. Appellant did not object to that opinion until he took the witness on cross-examination. In fact, appellant had already begun his own inquiries into the basis of the medical expert's opinion. The objection is simply untimely and presents nothing for review. *Hernandez v. State,* 538 S.W.2d 127, 129 (Tex.Cr.App.).

Appellant next complains of the expert's testimony regarding certain laboratory tests. This medical doctor testified that as a result of this test it was his opinion that complaint's vagina was penetrated by a male sex organ on the night of the offense. The objection made is that the State did not establish the chain of custody regarding tests performed on fluid specimens taken from the complainant's sexual organ. Appellant's next ground of error similarly asserts that said testimony was error since the State did not qualify the doctor as an expert "in determining scientific tests."

Assuming, without deciding, that appellant is correct, we find any such error harmless. The complainant testified that appellant penetrated her sexual organ with his sexual organ. Such evidence of penetration rendered the admission of the expert testimony in question, if error, harmless error beyond a reasonable doubt. Appellant has not demonstrated injury or harm from this testimony. See *Cunningham v. State,* 500 S.W.2d 820, 824 (Tex.Cr. App.).

Finally, appellant's contention that there is no evidence to establish compulsion to submit to sexual intercourse by threat of death to be imminently inflicted upon complainant is without merit. The record reflects that upon appellant's forceful entry into the house he threatened to kill the complainant and forcibly compelled her to submit to sexual intercourse.

These grounds of error are overruled and the judgment is affirmed.