**Phillip Curtis BOYKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00066–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 10, 1982.

C. N. Rothe, San Antonio, for appellant.

Bill White, Dist. Atty., Steven J. Zauft, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before CADENA, C. J., and BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for aggravated robbery. Appellant was found guilty by a jury and punishment was assessed at five years' imprisonment.

Initially appellant contends that the trial court erred in permitting appellant's in-court identification by the complainant since there was no clear and convincing proof that such identification was not tainted by pretrial identification procedures and confrontations.

Prior to trial, a motion to suppress hearing was held out of the presence of the jury pursuant to *Martinez v. State*, 437 S.W.2d 842 (Tex.Cr.App.1969), to determine the basis for the complaining witness' in-court identification. The testimony at the motion to suppress hearing revealed the following: on November 9, 1978, the complaining witness, Gary Krueger, was working the night shift at the 7–11 convenience store located on East Grayson Street in San Antonio. Shortly after midnight, he went to his car for some Tums or Rolaids to relieve an upset stomach. Returning from his car, he noticed a black man using the pay phone outside the store. The man came in behind him and went directly to the candy rack where he selected a broken piece of candy to buy. As Krueger rang up the sale, the man displayed a gun covered by a yellow towel. Krueger responded by handing him the cash from the register. After Krueger emptied the cash register, the man demanded more money. Krueger opened the store safe and placed some change rolls and dollar bills in a brown paper bag. He immediately called the police upon the assailant's exit.

Krueger identified appellant at the hearing as the person who robbed him on November 9, 1978, and stated that he had never seen him before the robbery. On cross-examination, he stated that the 7–11 store was located in a predominantly black neighborhood and that he had worked at that particular 7–11 for two months prior to the robbery. Krueger stated that he gave a statement to the police which included a description of the shirt the assailant was wearing.

Approximately three weeks after the incident in question, Krueger was robbed a second time at the same 7–11 by a knife-wielding youth. The following day, the police showed him two photographic displays. The officers inquired whether Krueger knew anybody in the photographs. While viewing the second display of five photographs, he identified appellant as the person who robbed him with a gun.

During the suppression hearing, Krueger described appellant as approximately six feet tall, thin and wearing sun glasses. He stated that the parking lot was illuminated by two eight foot fluorescent lights. In response to questions by appellant's counsel as to the amount of time that complainant viewed the assailant, complainant stated he glanced at him while he was on the phone and that he spent between two and three minutes with him in the store. On the morning of the suppression hearing, Krueger was again shown a set of photographs at the District Attorney's Office. He testified the prosecutor said that they had a suspect for the man who pulled a gun on him in November, that he would probably be in the courtroom, and that Krueger would have to identify him. Krueger elaborated that the detectives did not say anything to suggest that he pick out a certain photograph or to intimate that one of the photographs was of a particular person.

No other witnesses were called at the pretrial hearing. At the conclusion of the hearing, the trial court overruled the motion, stating that Krueger's identification of appellant was based upon what occurred at the time of the robbery and that he had ample time to see the man at the robbery.

■ Photographic identification does not automatically taint an in-court identification. *White v. State*, 496 S.W.2d 642, 647 (Tex.Cr.App.1973), citing *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ In *Simmons, supra*, 390 U.S., at 384, 88 S.Ct. at 971, the Supreme Court stated the general rule in cases such as the instant one:

> [We] hold that such [a] case must be considered on its own facts, and that convictions based on eyewitness identifications at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

■ Under this rule, the photographic display must be "impermissibly suggestive" and "give rise to a substantial likelihood of misidentification." *Turner v. State*, 614 S.W.2d 144, 146 (Tex.Cr.App.1981); *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Cr.App.1974). The showing of a photograph of the defendant to a witness prior to an in-court identification and the lapse of time between the offense and the photographic identification are only two of the factors to be considered in deciding whether the in-court identification is of independent origin. *Bermudez v. State*, 533 S.W.2d 806, 808 (Tex.Cr.App.1976); *White, supra*, at 647.

■ The identification is of independent origin when the witness' identification of the appellant is based on an adequate opportunity to view the appellant at the time of the offense. *O'Bryan v. State*, 591 S.W.2d 464, 478 (Tex.Cr.App.1979); *Brem v. State*, 571 S.W.2d 314, 320 (Tex.Cr.App. 1978).

■ Viewing the "totality of the circumstances" in the instant case, we find that in overruling the motion to suppress, the trial court made a proper determination that Krueger's in-court identification was based upon his independent view of appellant and not upon the photographic display. There was no showing that the photographs were impermissibly suggestive. The evidence adduced at the motion to suppress hearing established that Krueger identified appellant *in court* as the man who had robbed him. He testified that the detectives who showed him the photographs made no effort to influence him, and, in fact, did not influence his selection. Krueger further testified that because the parking lot was well lighted he had the opportunity to observe appellant outside the store, as well as inside the store when he stood both across the counter from appellant and next to him as he opened up the safe. Krueger identified appellant before the jury at trial, relating

generally the same facts as at the suppression hearing. The jury became the fact finder of the disputed identification issue. We agree with this statement by the Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977):

> [E]vidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

We find no error in the ground presented and, accordingly, overrule it.

In his second ground of error, appellant urges that the trial court erred in permitting the prosecutor to bolster the in-court identification of appellant through references to a suggestive identification procedure initiated by the prosecutor prior to trial.

The pertinent testimony of which appellant complains states the following:

> Q [by prosecutor]: Now, Mr. Torres has intimated that I pointed out who the Defendant was and told you that was the person that robbed you. Did I ever do that?
>
> Mr. Torres [Defense Counsel]: I didn't say that Judge. That was not my question. He is suggesting something to the witness. I did not intimate, Judge.
>
> The Court: Well, it's overruled, counselor.
>
> Q. Did I ever tell you that that was the man that robbed you?
>
> A. No.
>
> Q. Did I ... what did I tell you?
>
> Mr. Torres: Now, Judge, here again ...
>
> The Court: All right. Well, I will sustain the objection to that.
>
> Q. Okay. Did I in any way suggest to you who the Defendant was in this case, that he was the person who robbed you?
>
> A. No. You said that this was the ...
>
> Mr. Torres: Now, if the Court please, again, for the witness to volunteer

what was their private conversations
...

> The Court: I will sustain the objection to it. Let's proceed, counsel.
>
> (R. 170–171)

■ "Bolstering" occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Cr.App.1979); *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965).

■ We do not characterize the testimony complained of as an attempt to bolster any prior identification by the complainant, suggestive or otherwise. Rather, it was an attempt on redirect examination to rebut the suggestion made by the tenor of defense counsel's questions on cross-examination, to the effect that there had been something impermissibly suggestive in the prosecutor's pointing out appellant to the complainant in the courtroom. The prosecutor's question on redirect sought to negate the implication that (1) the prosecutor had told the complainant that this was the man who had robbed him, and (2) absent this suggestion, the complainant would not have been able to identify appellant. *See Williams v. State*, 607 S.W.2d 577, 580 (Tex. Cr.App.1980); *Pless v. State, supra*, at 84.

Appellant's second ground of error is overruled and the trial court's judgment is affirmed.