**Johnny Ray BALDWIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–84–229–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 30, 1985.

OPINION

NYE, Chief Justice.

This is an appeal from a conviction of aggravated sexual assault. Punishment was assessed by the jury at seventy-five years' confinement in the Texas Department of Corrections. The sufficiency of the evidence is not challenged. We affirm.

The evidence shows that the complainant was working as a clerk at Shoppa's Grocery Store in Wharton, Texas, on November 30, 1983. She stated that she began her shift that day at 5:00 p.m. She identified the appellant as a black man who entered the store three times that day; the third time he came back in the store there were no customers; that the appellant asked her for a paper sack and then told her, "I want your money," stating "I have a gun," and pulled it out of his left front pocket. The complainant described the gun in some detail. She also described the man's clothing, consisting of a "light blue real wrinkled shirt" and rubber boots with "funny stains on the top—real light stains."

After the complainant handed the man the paper sack filled with money from the cash register, he stated, "you're going with me." She testified that it was approximately 5:25 p.m. when she was forced to leave the store. While holding his gun close to his body, the appellant ordered her to get into an old beat-up car with a yellow top. The complainant could not identify the model of the car, but she remembered that the passenger door did not open from the outside and the outside mirror on the right-hand side of the car was broken.

The complainant testified that the appellant drove her out of town to different areas that she knew fairly well. The appellant asked her whether or not she could identify him. She told him that she could not and that "all black men look alike to me"; that she was untruthful when she told him she could not identify him, but that she did so because she was afraid he

Rob Ramsey, Wharton, for appellant.

Daniel W. Shindler, Bay City, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

would kill her if she told him that she could identify him.

While they were driving around, the complainant testified that she carefully slipped her bubblegum from her mouth, placed it in her hand, then stuck it down on the side of her seat adjacent to the car door. She later identified the gum which was removed from the car as State's Exhibit 4. She testified that, after stopping the car in the middle of a muddy, unpaved road, the appellant forced her to have sexual intercourse with him; that she complied with his demands because she was frightened of his gun, which remained within his immediate reach during the assault. She testified that he then drove her back down the road toward the freeway and that he finally let her out of the car. She ran to a nearby house and summoned help. Officers Rodgers and Delgado appeared shortly thereafter. The entire incident, from the time of her abduction at 5:25 p.m. until the time of her release, consumed approximately forty to forty-five minutes.

When asked by the prosecutor whether or not she could identify her assailant to the jury, the complainant responded, "something I will never forget." She positively identified appellant.

In his first ground of error, appellant contends that the trial court erred in admitting into evidence the in-court identification testimony of the complainant. Appellant argues that the complainant's in-court identification of him as the perpetrator of the sexual assault was tainted by an impermissibly suggestive pre-trial identification process, and was not shown to be based on independent observation.

On January 23, 1984, appellant filed his pretrial motion objecting to any in-court identification testimony and requested a hearing on this motion. A hearing was held on February 2, 1984, at which time the trial court found that the complainant's in-court identification of appellant was independent of her prior identification of him in a photo lineup and was, therefore, admissible.[1] Appellant again objected to the admission of the in-court identification by filing Defendant's Trial Objection Number 2 outside the presence of the jury and prior to any testimony by the complainant.[2]

When an in-court identification is challenged based upon the reason here asserted, a two-part test applies: (1) whether or not the photographic identification procedure was impermissibly suggestive; and (2) whether or not the identification would give rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Garcia v. State*, 626 S.W.2d 46 (Tex.Crim.App.1981); *Aumada v. State*, 657 S.W.2d 890 (Tex.App.—Corpus Christi 1983, pet. ref'd). In the instant case, the trial court concluded that the pre-trial display of photographs was "unnecessarily suggestive." The trial court based its decision primarily on the fact that the complainant was shown a photo line-up in which appellant's photo was larger (i.e., appellant's face was shown more as a close-up, whereas the other pho-

---

1. The court, in its written findings of fact and conclusions of law, found that: (1) the photographic lineup (Defendant's Exhibit 1) was unnecessarily suggestive, but that (2) the in-court identification was based upon observations of the suspect at the time the crime was committed.

2. The trial court overruled appellant's written trial objection to the complainant's identification testimony and further ordered that appellant may object to the admission of such identification testimony (and "all oral and written statements purportedly made by defendant,)" by simply referring the court's attention to "Trial Objection Number 2" without referring to all of the bases of said objections stated therein. At trial, appellant did not object to the complainant's identification testimony even by way of reference to his written objection. Even though it seems clear that both defense counsel and the trial court acted on the presumption that a trial objection was necessary to preserve error, we find that another objection before the jury was not required because appellant's pre-trial motion was heard and overruled. *See Waller v. State*, 581 S.W.2d 483, 485 (Tex.Crim.App.1979) (opinion on motion for rehearing); *Durrough v. State*, 672 S.W.2d 860 (Tex.App.—Corpus Christi 1984), remanded to C.A., 693 S.W.2d 404 (Tex. Crim.App.1985).

tos were not), and appellant's photo contained a "different colored background" (i.e., appellant's photo, and one other, was taken with a height indicator behind him). All of the men in the photo line-up were black men. Although the State contends that the photographic array was not impermissibly suggestive, it is not necessary for us to disturb the trial court's finding to that effect.

It is well established that, "even where the pre-trial identification procedure is impermissibly suggestive, in-court testimony of an identification witness will still be admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification." *Jackson v. State,* 657 S.W.2d 123, 130 (Tex.Crim.App.1983); *Turner v. State,* 614 S.W.2d 144 (Tex.Crim.App.1981); *Thomas v. State,* 605 S.W.2d 290 (Tex. Crim.App.1980).

 The factors to be considered in determining the origin of the in-court identification include:

(1) the prior opportunity to observe the alleged criminal act;

(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description;

(3) any identification prior to lineup of another person;

(4) the identification by picture of the defendant prior to the lineup;

(5) failure to identify the defendant on a prior occasion; and

(6) the lapse of time between the alleged act and the lineup identification.

*Thompson v. State,* 480 S.W.2d 624 (Tex. Crim.App.1972).

At the pre-trial hearing on appellant's motion to suppress the in-court identification testimony, the complainant testified that she had gotten a good look at the appellant in good light at the time of the criminal act. She testified that a black male entered the store where she was working in daylight on three separate occasions that day; that she was within close proximity to him for forty to forty-five minutes altogether; that she was sexually victimized by this man in the car; that, about one week later, it had taken her "not more than two or three seconds" to pick appellant's photo out of a photo lineup containing eight photos; that she had never seen appellant before or since November 30, 1983, except in the courtroom on the day of the pretrial hearing when she identified appellant as the black male who sexually assaulted her; that there was no doubt in her mind that the person she picked out in the photo spread was her assailant; and that she would be able to identify that same person even if she had not seen the photographs shown in Defendant's Exhibit No. 1.

On cross-examination at the pre-trial hearing, the complainant described in detail the clothing that the appellant was wearing, including the fact that his shirt had short sleeves and was not tucked in his pants. She further testified that she had provided the police officers a detailed description of appellant's physical characteristics and his clothing on the night of the offense; that Officer Jess Howell had called her on the following Monday or Tuesday and told her the police had a suspect; that he asked her to come to the station to see if she could identify the person who committed the offense from a photographic line-up; that after she picked appellant's photo out of the lineup, Officer Howell told her that she had picked the person they suspected of committing the crime; that she was aware that someone had signed a statement confessing to this crime before she looked at the photo display; and that, other than the day she picked out appellant's photo at the station, the only other time she had seen that photo was that day at the pre-trial hearing.

The complainant also testified on cross-examination that she had previously been shown a photo lineup on the night of the offense (November 30); that she did not identify anyone out of this photo display, and that she had not been told a suspect had been arrested at this time. The com-

plaintant also testified that she came to the hearing that day expecting to identify someone as the person who had sexually assaulted her; that appellant was the only black male sitting at the counsel table at that time; and that appellant appeared to be the same person as the person she had picked out of the photo line-up. On redirect, the complainant positively stated that the fact that she had heard that someone had been arrested and had given a statement did not affect her earlier photographic identification of appellant.

Officer Jess Howell also testified at the pre-trial hearing. He testified that, on December 6, 1983, he put the photographic display together, which included a photo of appellant; that he called the complainant to come down to look at the photos; that, prior to being asked to look at the photo spread, he told the complainant that they had a possible suspect in custody; that when he opened the photo spread, the complainant went immediately to appellant's photo (i.e., within seconds) and identified appellant as the person who sexually assaulted her; that after she picked out appellant's photo, he told her that was the person under suspicion of committing the crime; that the complainant had previously given a statement to him in which she gave a very detailed and accurate description of appellant's physical characteristics and his clothing; that she particularly remembered the scar on his left cheek and described a thin beard on the chinline. He further stated that he had shown the complainant another photo spread containing eight photos on the night of the offense (which did not contain a photo of appellant) and she did not identify anyone at that time; and that the complainant did not express any doubt that she had picked out the photo of the person who committed the offense in question.

Appellant now contends that the following circumstances show that the complainant's in-court identification of appellant was not of independent origin: (1) the fact that the complainant looked at appellant's photo a second time before identifying him in court at the pre-trial hearing; and (2)

that she was not able to state unequivocally that her in-court identification of appellant was not influenced by her prior photo identification of appellant; and (3) that the complainant failed to point out to anyone that she observed any tattoos on the arms of her assailant even though she testified that he was wearing a short sleeve shirt.

■ The fact that a photo of appellant was shown to the complainant before an in-court identification is only one of the factors to be considered in determining whether or not the in-court identification is of independent origin. *White v. State,* 496 S.W.2d 642 (Tex.Crim.App.1973); *see Proctor v. State,* 465 S.W.2d 759, 764 (Tex.Crim. App.1971). The complainant's consistent testimony that she had a good opportunity to observe appellant at close range during daylight hours was sufficient to serve as an independent origin for the in-court identification. *See Waller v. State,* 648 S.W.2d 308, 312 (Tex.Cr.App.1983); *Thomas v. State,* 605 S.W.2d 290 (Tex.Crim.App.1980); *Komurke v. State,* 562 S.W.2d 230, 234 (Tex.Crim.App.1978).

In response to appellant's second argument, we note that the complainant made several positive in-court identifications of the appellant at trial as the man who sexually assaulted her. When asked by defense counsel whether or not she could honestly say that the pretrial photo identification had "just no influence" on her in-court identification, the complainant first responded; "He is the person," then answered, "No, No" when asked again. On redirect examination, the complainant testified that she particularly remembered "his eyes, his mannerisms" from the night of the offense. In response to the prosecutor's question; "Are you making your identification from looking at the photograph and saying the photograph matches up with Johnny Ray Baldwin? Are you making your identification by looking at Johnny Ray Baldwin and saying that person matches up with the person that raped me?," the complainant positively stated:

"I'm looking at Johnny Ray Baldwin. He raped me."

■ Finally, appellant argues that the complainant's failure to report having observed any tattoos on the arms of the assailant who was wearing a short sleeve shirt is a serious discrepancy between her description and the actual appearance of appellant who has tattoos on both arms. Appellant testified that he had the tattoos on his arms on November 30, 1983. A photograph showing appellant's arms turned upward so that the tattoos are visible was admitted into evidence. There is no conclusive evidence, however, that the complainant would necessarily have seen the tattoos. Further, in light of the overall high level of certainty demonstrated in her identification of appellant prior to and during the trial and the overall accurate description, we find that the existence of such a discrepancy does not show by clear and convincing evidence that the complainant's in-court identification of appellant as her rapist was so tainted by improper pre-trial identification procedures that it was not of an independent origin. *See Jackson v. State,* 628 S.W.2d 446 (Tex.Crim.App.1982); *see also Garza v. State,* 633 S.W.2d 508, 511 (Tex.Crim.App.1981) (opinion on motion for rehearing).

The record clearly reveals that the complainant's prior observation of the appellant at the time of the sexual assault was sufficient to serve as an independent origin for the in-court identification. The complainant had ample opportunity to view the appellant and her attention was acutely focused on him because she was being sexually victimized by him. She had previously given an accurate description of his overall physical characteristics and his clothing; she never gave a description inconsistent with the appearance of the appellant; she never incorrectly identified another as the suspect; she was positive in her in-court identification; and only six days elapsed between the date of the offense and the date of the first photo identification of appellant by the complainant.

When viewed under the totality of the circumstances, the pre-trial procedure complained of on appeal was not so impermissibly suggestive as to lead to a substantial likelihood of misidentification. *See Jackson v. State,* 657 S.W.2d at 130; *Turner v. State,* 614 S.W.2d at 146. We conclude that the complainant's in court identification of the appellant was admissible because it was in fact very reliable. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court committed reversible error in failing to grant appellant's motion for mistrial because of the prosecuting attorney's jury argument that appellant had failed to express contrition or remorse. The record reflects that the prosecuting attorney, during the punishment phase of the trial, made the following argument:

"You got no business feeling sorry for this man, and you have no business letting this man do anything that would allow him to remain free. He showed no retribuse (sic) on that stand even though you convicted him. He denied it. No retribuse (sic) whatsoever. He is not sorry for what he did. He still won't even admit it after a jury of his peers has convicted him."

The defense counsel objected: "that is an improper thing for him to ask them to consider when Mr. Baldwin has gotten up there and maintained his innocence. We object to that." The trial court sustained the objection and instructed the jury to disregard the prosecuting attorney's comment. Defense counsel then requested a mistrial which was denied.

Both appellant and the State cite, as authority for their respective arguments, cases in which the Court of Criminal Appeals has determined whether or not a prosecuting attorney's jury argument was an impermissible comment on the defendant's failure to testify. *See Owen v. State,* 656 S.W.2d 458 (Tex.Crim.App.1983); *Johnson v. State,* 611 S.W.2d 649 (Tex.Crim. App.1981); *Overstreet v. State,* 470 S.W.2d 653 (Tex.Crim.App.1971). In the present case, appellant testified at both the guilt-in-

nocence and the punishment stages of the trial. Further, appellant's objection at trial, and ground of error now asserted, focuses on an accused's "right to maintain at all stages of trial that he is not guilty."

Appellant relies on Justice Whitham's dissenting opinion in *Thomas v. State*, 629 S.W.2d 112 (Tex.App.—Dallas 1981), *aff'd*, 638 S.W.2d 481 (Tex.Crim.App.1982), in urging this Court to acknowledge a defendant's right to maintain his innocence throughout trial separate and apart from his right to be free from prosecutorial comments on the failure of the accused to testify. He further urges this Court to develop a standard of review which would "reverse *all* cases in which the prosecutor comments on the defendant's lack of contrition, where the defendant has pleaded not guilty and continues to maintain his innocence." We decline to espouse such a proposition.

■ The real issue before us is whether the prosecuting attorney's comments regarding the appellant's lack of remorse was improper to the extent that such jury argument constituted reversible error. Improper argument on the part of the prosecuting attorney occurs when, in his or her argument to the jury, the prosecuting attorney violates a mandatory provision of a statute, makes a manifestly improper, harmful, or prejudicial argument, or injects through his argument some new and harmful fact into the case. *Cannon v. State*, 668 S.W.2d 401 (Tex.Crim.App.1984).

■ In this instance, appellant testified at both stages of the trial and fully maintained his innocence throughout the entire trial. We do not find that, under the totality of the facts and arguments, the comment was reversible error. Rather, it seems that the prosecuting attorney attempted to call to the attention of the jurors that which the jurors had an equal opportunity to observe. *See Jordan v. State*, 646 S.W.2d 946, 948 (Tex.Crim.App. 1983).

Furthermore, if the jury argument was improper, any prejudicial effect was ade-quately cured when the trial court sustained appellant's timely objection and instructed the jury to disregard the last statement made by the prosecuting attorney. *See Armitage v. State*, 637 S.W.2d 936 (Tex.Crim.App.1982); *Anderson v. State*, 633 S.W.2d 851 (Tex.Crim.App.1982); *see also Borgen v. State*, 672 S.W.2d 456 (Tex.Crim.App.1984). We hold that the trial court properly overruled appellant's motion for mistrial. Ground of error number two is overruled.

In his third ground of error, appellant contends that the trial court committed reversible error by admitting testimony of the complainant, over appellant's objection, concerning the adverse effects on her life as a result of the sexual assault committed against her. Appellant complains of the following testimony at the guilt-innocence phase of trial:

"Q. You say on the next Tuesday you tried to go back to Shoppa's Store. Did you work there that morning?

A. I managed to work there with Ronnie Shoppa. They wouldn't let me go by myself. I couldn't handle it.

Q. Did you want to go by yourself?

A. No, I just couldn't. No, I thought I could get over it.

Q. Did you go back to work the next day?

A. Yes.

Q. And did you work by yourself?

A. No.

Q. And did you continue to work at Shoppa's?

A. No.

Q. Why don't you work at Shoppa's? MR. RAMSEY: Excuse me. One more time, and I won't interrupt again. May we have a running objection as to this line of testimony as to anything that happened after the date of the offense concerning how it effected [sic] the witness. I believe it's to prejudice the jury and not to give the facts.

THE COURT: Your objection is overruled, and you shall have a running objection.

Q. Do you still work at Shoppa's?

A. No.

Q. Is there any reason you don't work at Shoppa's?

A. I'm just scared to death of any black man that comes in.

Q. Do you blame all black men for what happened to you?

A. No, but I'm scared of them.

Q. Do you still work at H.E.B. in El Campo?

(Witness nods head)

\* \* \* \* \* \*

THE WITNESS: Yes. I'm sorry.

*QUESTIONS BY MR. ROADES:*

Q. Where do you work at H.E.B.?

A. I cake decorate. I work in the bakery.

Q. Are you alone in H.E.B. when you work there?

A. No.

Appellant contends that the above testimony was inadmissible because it was not relevant to any contested issue and, in addition, such testimony was calculated to prejudice and inflame the minds of the jury by creating sympathy for the victim. We disagree.

▮ Appellant correctly recognizes that the question of whether or not evidence is relevant to any issue in the case is within the sound discretion of the trial court, and this Court will not reverse absent a showing of a clear abuse of that discretion. *Williams v. State,* 535 S.W.2d 637, 639–40 (Tex.Crim.App.1976); *Hernandez v. State,* 484 S.W.2d 754 (Tex.Crim. App.1972). Where, as here, an accused is charged with the offense of aggravated sexual assault, the State must prove that the accused: (1) intentionally or knowingly; (2) caused the penetration by any means of the anus or vagina; (3) of a person other than his spouse; (4) without that person's consent. TEX.PENAL CODE ANN. § 22.011 (Vernon Supp.1985).[3]

**3.** The aggravating element of the sexual assault is provided in § 22.021(a)(2) (Vernon Supp. 1985).

▮ Lack of consent to the sexual intercourse in a sexual assault case is an essential element of the State's case. *Boston v. State,* 642 S.W.2d 799, 801 (Tex. Crim.App.1982); *Moon v. State,* 607 S.W.2d 569 (Tex.Crim.App.1980). In the instant case, the testimony of the victim concerning her state of mind and her condition soon after the offense occurred tends to sustain her version of the sexual assault, the intent with which it was made and tends to prove the essential element of lack of consent. *See Hart v. State,* 139 Tex. Cr.R. 101, 138 S.W.2d 818 (1940); *see also Maxwell v. State,* 362 S.W.2d 326, 328 (Tex. Crim.App.1962); *Klinedinst v. State,* 159 Tex.Cr.R. 510, 265 S.W.2d 593, 598 (1953), *cert. denied,* 347 U.S. 930, 74 S.Ct. 534, 98 L.Ed. 1082 (1954). We hold that the testimony was both relevant and admissible. Appellant has not shown a clear abuse of discretion by the trial court in admitting the complainant's testimony.

▮ Further, appellant has failed to show how he was harmed if the evidence was in fact only marginally relevant. *See Williams v. State,* 629 S.W.2d 791, 795 (Tex.App.—Dallas 1981, pet. ref'd). We find that, given the nature of the offense, and, based on the facts of the case taken without the complainant's post-rape emotional condition, the punishment assessed is not unjustified.

When considering the record as a whole, we find that no reversible error is shown by the admission of such testimony. Appellant's third ground of error is overruled.

The judgment of the trial court is AFFIRMED.