Robert MASON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00157–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 22, 1987.

Rehearing Denied Nov. 19, 1987.

Donald W. Bankston, Richmond, for appellant.

Sam W. Dick, Fort Bend Dist. Atty., Frank Follis, Richard A. Dawson, Fort Bend Asst. Dist. Attys., Richmond, for appellee.

Before WARREN, SAM BASS and COHEN, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of aggravated sexual assault, and assessed punishment at 28 years confinement.

Appellant first contends that the trial court erred in not requiring the State to elect between two erroneously joined counts in the indictment. Appellant was charged in a two-count indictment with aggravated sexual assault and with burglary of a habitation with intent to commit aggravated sexual assault. Both crimes arose out of the same transaction and were committed at the same time, date, and place, and against the same victim.

Tex.Code Crim.P.Ann. art. 21.24(a) (Vernon Supp.1987) provides:

> Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

Tex.Penal Code Ann. sec. 3.01 (Vernon 1974) provides:

> In this chapter, 'criminal episode' means the repeated commission of any one offense defined in Title 7 of this code (Offenses Against Property).

Burglary of a habitation is listed in Title Seven, section 30.02(a)(1), of the Penal Code, and aggravated sexual assault is listed in Title Five, section 22.021, of the Penal Code. They are not "one offense," but different ones, and they are not both defined in Title Seven. Consequently, the offenses were misjoined because they did not arise "out of the same criminal episode," as defined by section 3.01. The joinder of these two offenses was not authorized by Article 21.24(a) and constitutes error.[1]

During voir dire, appellant objected to the misjoinder by stating "they cannot have submitted to them both charges to the

---

1. In reaching this conclusion, we do not rely on *Callins v. State,* 726 S.W.2d 555 (Tex.Crim.App. 1986), a plurality opinion that is still pending on rehearing, and therefore, not final.

jury, and we feel that is error." The objection was overruled. Later in voir dire, the State objected to a statement by appellant's counsel on the ground that "it's perfectly a legal way for the State to charge two offenses in the same indictment." The trial court sustained the State's objection. Immediately before appellant's arraignment, he again objected to the misjoinder and was again overruled. Finally, appellant objected to the jury charge and asked that only one offense be submitted to the jury. The objection was overruled. The jury charge submitted both offenses, but instructed the jury that it could find appellant guilty of only one.

The State contends that the error was waived because appellant's repeated objections were insufficient to preserve his complaint of misjoinder. The State asserts that a motion to quash the indictment is required to preserve a claim of misjoinder. We disagree.

In *Overton v. State*, 552 S.W.2d 849 (Tex.Crim.App.1977), the court held that similar error was preserved by the appellant's "motions" (plural) to elect and to quash. It held that the motions "apprised the trial court that appellant did not desire to have the offenses joined in a common trial," and that "the motions clearly amounted to a request for severance under Section 3.04...." 552 S.W.2d at 850. Thus, the *Overton* court apparently sustained "separate grounds of error" complaining of the denial of the motion to quash and of the denial of the motion to elect. 552 S.W.2d at 849. The court did not hold that only a motion to quash preserves the error. Based on *Overton*, we hold that appellant preserved the error.

We next must decide whether the error requires reversal.

Such error formerly resulted in automatic reversal, without inquiry as to harm. *See Overton*, 552 S.W.2d at 850 ("When a request is made to sever, the trial court must grant the request, and failure to do so results in reversible error"); *Waythe v. State*, 533 S.W.2d 802, 804 (Tex.Crim.App. 1976) ("We have no ambiguity; instead, we have a command by the law-making body

which we must enforce ... Sec. 3.04(a) is mandatory...."); *Rice v. State*, 646 S.W. 2d 633, 636 n. 3 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd) (finding harm, but noting that "harm is not required when proper objection is made to a mandatory statute....").

Since these cases were decided, however, Texas criminal law has shifted dramatically away from the concept of granting reversals on appeal where no harm is shown. The present trend is to require harm as a condition of reversal, and it has been accelerated by constitutional amendment, by legislation, and by overruling of prior decisions. Prominent examples include the constitutional amendment and legislation abolishing the doctrine of fundamental error in indictments, Tex. Const. art. V, sec. 12(b); Tex.Code Crim.P.Ann. art. 1.14(b) (Vernon Supp.1987); abolishment of the rule that erroneous denial of a motion to quash an indictment requires automatic reversal without harm, *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986); judicial abandonment of the rule requiring automatic reversal without harm for fundamental error in the jury charge, *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g); constitutional amendment abolishing the doctrine of fundamental error in captions to legislation, Tex. Const. art. III, sec. 35; abolishment of the requirement for automatic reversal to cure certain void sentences, Tex.Code Crim.P.Ann. art. 37.10 (Vernon Supp.1987); permission, by constitutional amendment and legislation, for broad authority to amend the substance and form of indictments and informations, Tex.Code Crim.P.Ann. art. 28.10 (Vernon Supp.1987).

■ These and other significant, but piecemeal, changes have been overshadowed by the enactment of rule 81(b)(2), the harmless error rule of the Texas Rules of Appellate Procedure, which provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contri-

bution to the conviction or to the punishment.

Thus, we cannot affirm the present judgment, in light of the erroneous misjoinder, unless we find beyond a reasonable doubt that the misjoinder made no contribution to the conviction or to the punishment.

We first observe that this is not a case in which the State secured two convictions when it was entitled to only one. The jury made no finding concerning the burglary count, and the appellant was convicted of only one offense, aggravated sexual assault.

We further observe that the evidence concerning both crimes would have been admissible upon the trial of either, even if only one count had been alleged in the indictment or submitted to the jury. This is because the events of both crimes occurred at the same date, time, and place, and upon the same victim. The facts of the two offenses were completely intertwined and inseparable. Thus, evidence of both crimes would inevitably have been heard upon the trial of either. *Mann v. State,* 718 S.W.2d 741, 743–44 (Tex.Crim.App. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987); *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim.App. 1986).

Finally, we observe that the erroneous joinder has benefited this appellant because he was acquitted of burglary, a first degree felony, that otherwise could have been tried after the instant case, exposing him to the possibility of a life sentence and to the possibility that the burglary sentence would be cumulated with the sentence in the instant case. *See* Tex.Code Crim.P. Ann. art. 42.08 (Vernon Supp.1987); *see Ex parte McWilliams,* 634 S.W.2d 815 (Tex. Crim.App.1982) (op. on reh'g), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

Consequently, we find beyond a reasonable doubt that the error in not requiring the State to elect made no contribution to the conviction or to the punishment and was either harmless or beneficial to the appellant.

Point of error one is overruled.

Appellant contends in his second, third, and fourth points of error that the trial court erred in not suppressing the complainant's in-court identification. He contends that the in-court identification should have been suppressed: (1) because the pretrial photo-array was impermissibly suggestive; (2) because the State was unable to produce the original photo-array at trial; and (3) because the State's failure to produce the photo-array was a violation of the rule in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The complainant testified that on March 29, 1985, at about 3:00 a.m., she was sexually assaulted by appellant, who compelled her to submit by threatening her with a knife. Officer McDonald, of the Richmond Police Department, met the complainant at 8:15 a.m. that morning, and she told him that she recognized her assailant, but did not know his name. McDonald met the complainant again at 11:00 a.m., at which time she named appellant as her assailant. On April 23, 1985, the complainant identified appellant from a photo-array containing six pictures of black males.

At the identification hearing, Officer McDonald testified that the original photo-array had been misplaced. In place of the original, the State offered a poor photocopy of the original photo-array.

Appellant urges that we hold that the photo-array was impermissibly suggestive, as a matter of law, because the State failed to produce the original photo-array at trial. *United States v. Sanchez,* 603 F.2d 381 (2d Cir.1979), relied on by appellant, made such a holding upon proof that the Drug Enforcement Administration routinely failed to preserve its photo-arrays. The court held that "in the absence of the actual photo spreads used, this court will assume that the pretrial identification procedure was impermissibly suggestive." 603 F.2d at 385. The court criticized the DEA severely and adopted the presumption in order to coax the DEA into preserving such evidence for trial. 603 F.2d at 386–87. In the instant case, there is no indication that the State deliberately destroyed the

photo-array, a pivotal factor in *Sanchez*. Rather, the instant record reflects that the Richmond Police Department's policy was to retain photo-arrays, and the absence of the photo-array from this case was unexplainable.

■ Even if we assume that the photo-array was impermissibly suggestive, appellant must still demonstrate that it was "so impermissibly suggestive as to give rise to the very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *Turner v. State*, 614 S.W.2d 144, 145–6 (Tex.Crim.App.1981). As stated in *Turner*:

> This analysis must begin with the rule of *Thompson v. State*, 480 S.W.2d 624 (Tex. Cr.App. [1972]); that is, a witness' in-court identification which is independent of any pre-trial identification procedures is admissible.

The "central question" thus becomes "whether under the 'totality of the circumstances' the identification was reliable," in spite of the impermissibly suggestive pre-trial identification procedure. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). The relevant factors are the witness' opportunity to view the criminal during the crime, the witness' degree of attention at that time, the accuracy of any prior description by the witness of the criminal, the witness' level of certainty, and the length of time between the crime and the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114–16, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

■ The complainant testified that her in-court identification was based only on her observation of appellant at the time of the offense, and not at all on her observation of the photo-array. In the instant case, the complainant was with her assailant for over two hours, and she had a good opportunity to view him. She testified that although she was frightened and the room was lit only by the light from a television, her attention was focused on her assailant, and that she had no doubt that it was appellant.

The complainant's original description of appellant was that he was 5'11", 150 pounds, and 20 to 25 years old, whereas, the record reflects that at the time of trial, appellant was 5'9", 190 pounds, and 41 years old.

Appellant puts heavy reliance on Officer McDonald's testimony that he told the complainant, prior to the photo lineup, that appellant had been arrested, and told her after the lineup that she had picked out appellant. However, the complainant denied McDonald's assertions, and the trial court was entitled to believe her, or to believe that such statements did not cause her to identify appellant at trial or at the photo lineup.

It is very significant that the complainant named appellant as her assailant only a few hours after the incident, and nearly one month before she viewed the photo-array. The record also reflects that the complainant had been in a vehicle with appellant sometime before the offense, and that appellant had been in the complainant's house only one week before the offense.

The time between the offense and trial was approximately 11 months. In *Sanchez*, a delay of 15 months did not render the in-trial identification unreliable, even though the court presumed that the photo-array was impermissibly suggestive. Finally, the instant facts are less compelling than those in *Sanchez* and *Turner*, where both courts unanimously affirmed convictions and found the in-court identifications reliable, despite finding that the pre-trial photo lineups were impermissibly suggestive.

We conclude that under the totality of the circumstances, even assuming that the pre-trial identification was impermissibly suggestive, there was no substantial likelihood of irreparable misidentification.

■ Finally, we find no error under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, *Ball v. State*, 631 S.W.2d 809 (Tex.App.— Eastland 1982, pet. ref'd), relied on by appellant, is distinguishable because *Ball* involved suppression, in violation of a court order, of a picture strongly supporting a claim of self-defense in a murder case,

rather than failure to preserve a picture arguably relevant to pre-trial identification. Moreover, we have found nothing in the appellate record indicating that appellant's motions for discovery of these photos were presented to the trial judge and ruled on.

The trial court did not abuse its discretion in allowing the complainant's in-court identification. The second, third, and fourth points of error are overruled.

The judgment is affirmed.